470 So.2d 941 (1985)
Virgil A. SIMON, Plaintiff-Appellee,
v.
Dr. Curt H. SMITH, et al., Defendants,
St. Francis Cabrini Hospital of Alexandria, Louisiana, Defendant-Appellant.
No. 84-432.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
Rehearing Denied June 27, 1985.
*942 Wilkinson and Carmody, Arthur Carmody, Shreveport, for defendant-appellant.
Molony, Nolan, North & Riess, Bruce A. North, Metairie, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
DOMENGEAUX, Judge.
This appeal arises from a jury verdict in favor of the plaintiff and against the appellant in a medical malpractice suit. By original and amended petitions, Virgil Simon sued: his surgeon, Dr. Smith; the McArthur Surgical Clinic, the partnership in which Dr. Smith practiced; Dr. Godley, an internist; the Freedman Clinic in which Dr. Godley practiced; Dr. Buckley, and Dr. Alexander, radiologists, and their professional corporation; and St. Francis Cabrini Hospital (Cabrini). All defendants, save Cabrini, settled with Mr. Simon.[1] The jury found Dr. Smith and Cabrini jointly liable and awarded a judgment of $750,000.00. Cabrini has appealed; the appellees[2] have answered the appeal.
*943 The facts of the case can be summarized as follows: In 1976 Virgil Simon was forced to retire from his position as a painter at the Pinecrest State School. He was suffering from acute angina. As of the date of his retirement, Mr. Simon began receiving a 100% disability pension. In 1977 he underwent double bypass heart surgery. For a 5-6 week period in the fall of 1978, Mr. Simon worked part-time driving a truck. However, he was forced to cease this employment due to his ill health. Mr. Simon was surgically treated for an aortic aneurysm on November 1, 1978. Ten days later his gallbladder ruptured.
It was during the emergency surgery on the gallbladder by Dr. Smith that a laparotomy pad was mistakenly left in Mr. Simon's abdomen. Cabrini's surgical nurses, who were responsible for keeping an accurate count of the number of surgical gauze pads used during the operation, failed in their "sponge count". In other words, the nurses mistakenly verified that each lap pad used in the wound had been retracted from it.
Before Mr. Simon was discharged following the gallbladder surgery, a T-Tube cholangiogram was performed by Radiologist Buckley. The purpose of such an x-ray is to determine if the patient's bile is flowing properly. The test results were favorable and a memo to that effect was forwarded to the surgeon, Dr. Smith. Although a lap pad is not always visible in an x-ray, the radiopaque strip attached thereto is. The sole purpose of this strip is to make the lap pad visible on an x-ray should one be left in the body cavity. Dr. Buckley failed to report the existence of a foreign body although the x-ray clearly showed the radiopaque strip on the pad. Uncontradicted testimony at trial explained the lap pad on the x-ray could just as easily have been part of a bandage on top of or beneath the patient as inside him. However, it was also established at trial that omitting mention of a visible foreign object in the patient's body cavity was not good reporting procedure.
On December 24, 1978, Mr. Simon was admitted to Cabrini complaining of pain in his abdomen. Dr. Smith viewed the x-rays and noticed the foreign object, assuming it to be a piece of penrose drain mistakenly left in the wound following the gallbladder surgery. Mr. Simon was not immediately told of the foreign material locked in him and was treated for hepatitis and released.
After several more visits with Dr. Smith, Mr. Simon on his own initiative applied for and was admitted to the Ochner Foundation Hospital in April of 1979. The lap pad was immediately identified and removed from the stomach wall into which it had melted. Dr. Simon continued to return to Ochner for regular follow-up treatment.
Following surgery to remove the lap pad, Mr. Simon fell prey to several other medical ailments. Mr. Simon was hospitalized in 1980 for vascular problems; in 1981 he suffered a broken rib; in 1982 he was again hospitalized for angina and infection in his fingers, and later that year he was admitted to St. Luke's Hospital in Houston for treatment of vascular problems. At various times following the removal of the lap pad, Mr. Simon also suffered from pneumonia, a hernia, jaundice, and a severe skin rash. While few of these problems were directly related to the damage caused by the lap pad it is assumed that Mr. Simon's physical stamina was weakened by that unfortunate occurrence.
After trial on the merits, the jury awarded the plaintiff $300,000.00 in general damages and $450,000.00 in special damages. Because the jury found both Dr. Smith and Cabrini responsible for the damages to Mr. Simon, and in view of the fact that Dr. Smith had previously settled with the plaintiff, the trial judge cast the defendant Cabrini in judgment for $375,000.00, or one-half of the jury's total award. From this *944 verdict Cabrini has appealed citing five assignments of error. The appellees have answered the appeal citing two additional errors. We will deal with each in turn.
Defendant-appellant contests the use of normal life expectancy tables as applied to this plaintiff, the manner of computing and the lack of proof of future medical expenses, and the existence of any lost wages, past or future. Because the jury gave one global award for past and future medical expenses and lost earnings, we are unable to determine what part of their award should be allocated to particular damages. Therefore, we are required to view the first three of the appellant's assignments together in reviewing any one of the special damage awards.
In their brief, appellees set forth their maximum special damages, a total of $603,283.12, as follows: $153,283.75 in past medical expenses testified to by the deceased plaintiff's wife; $355,040.37 in future medical expenses computed using an average of medical expenses in the six months preceding trial projected over a 13.5 year life expectancy taken from actuarial tables; and $94,959.00 in lost wages from the date of the gallbladder surgery projected through Mr. Simon's statistical age of retirement.
We turn first to the issue of lost earnings. In 1976 Mr. Simon retired on a 100% disability pension. His employer provided any retired employee the opportunity to return to work if done within five years of retirement. Appellees contend Mr. Simon would have returned to his former employment absent the lap pad episode. This contention is arguable considering Mr. Simon's inability to continue part-time work as a truck driver and his medical history apart from the damage caused by the lap pad. At any rate, we find that an award of lost earnings, past or future, would result in unjust enrichment. In other words, Mr. Simon would have received a salary if he had returned to work or the same amount in pension if he did not. To require the appellant to pay for lost earnings would effectively compensate twice for a single inability to work. Therefore, the appellees are not entitled to an award for lost earnings.
Secondly we address the awards for medical expenses. As to past medical expenses, the parties stipulated that at least $93,500.00 had been incurred by Mr. Simon before the date of trial. However, Mrs. Simon was uncontradicted in her testimony relating $153,283.75 in medical bills to the problems caused by the lap pad. We hold that appellees have proven their total of $153,283.75 in past medical expenses.
The appellant claims the jury erred in its award for future medical expenses. The asserted grounds of error are twofold, that the appellees have not met the standard of proof for future medical expenses and that what expenses were proven were projected by use of life expectancy tables designed for healthy individuals, a category which, it is vehemently argued, did not include Mr. Simon. It is fundamental that "[f]uture medical expenses, like any other element of damages, must be established with some degree of certainty." Sikes v. McLean Trucking Company, 383 So.2d 111 (La.App. 3rd Cir.1980); Mathews v. Hanover Insurance Company, 428 So.2d 1273 (La.App. 3rd Cir.1983). "[A]wards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable cost." Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.1970), writ denied, 256 La. 266, 236 So.2d 36 (1970); Head v. St. Paul Fire and Marine Insurance Company, 408 So.2d 1174 (La.App. 3rd Cir.1982), writ denied, 412 So.2d 99 (La.1982); and Mathews v. Hanover Insurance Company, supra. In the present case the uncontradicted testimony of Mr. Simon was that he had a regularly scheduled appointment every six weeks to two months at Ochner for the purpose of cleaning or changing his drainage tube, and such procedures were expected to continue for the rest of his life. Further, these procedures had totalled $13,657.50 for the six months preceding trial. Since there was no evidence to rebut the *945 necessity of these periodic procedures nor their cost, we find that appellees have proven yearly future expenses in the amount of $27,315.00. What the appellees have not proven to our satisfaction is the number of years by which such annual figure should be projected. The appellees' economist, quoting from the life expectancy tables of the U.S. Department of Health and Human Resources, estimated Mr. Simon's life expectancy to be 13.5 years. If, as appellees suggest, we take the annual future medical expenses figure and multiply it by 13.5 years and then discount it, we arrive at the $355,040.37 figure appellees seek as damages.
However, appellant is correct in its contention that "the use of life expectancy tables is disfavored where the plaintiff has a pre-existing condition or disease which adversely affects his or her projected life span, since the tables are based on the lives of healthy persons." Smith v. Miller's Mutual Insurance Company, 419 So.2d 59 (La.App. 2nd Cir.1982), writ denied, 422 So.2d 155 (La.1982), citing 29 Am.Jur.2d 1006, § 898 and Muller v. Lykes Brothers Steamship Company, 337 F.Supp. 700 (E.D.La., N.O.Div.1972), aff'd. 468 F.2d 951 (5th Cir.1972). Appellant argues that the probative value of the mortality tables may be weakened, and even destroyed by the ill health of the person whose life expectancy is at issue. The ill health of Mr. Smith is amply demonstrated by the record. Prior to his fateful gallbladder surgery he suffered from recurring heart and vascular problems. Following the lap pad episode he continued to suffer from vascular problems and other serious ailments such as infections, angina, pneumonia, hernia, and skin rashes. This court is of the opinion that inasmuch as the jury relied on appellees' economist's 13.5 year life expectancy estimate, it has abused its great discretion in awarding future medical damages. Taking into account Mr. Simon's medical history prior to trial, we find that $177,520.50, or one-half of the appellees' demand, is a reasonable amount to award for future medical expenses.
We have found that the appellees are entitled to past and future medical expenses totalling $330,804.25. Accordingly, the special damage award of the trial court is reduced to that amount.
Appellant's fourth assignment of error generally criticizes what is termed the "runaway sympathy of the jury" which prevented appellant from obtaining a fair trial. It is argued that such "runaway sympathy" is evident in the jury's award as well as in its behavior, post trial, toward Mr. Simon's wife and son. We find the awards for general and special damages, as amended, are well within the realm of discretion allowed the trier of fact. Further, we find no merit in appellant's claim that the jury, or any member thereof, exhibited undue emotion and prejudice towards the appellees. We quote from the trial judge's written reasons for judgment stating, "the Court observed the demeanor of the jury during and immediately after the termination of the trial, and it did not see anything that would cause the Court to grant a new trial."
Lastly, appellant contends the trial court erred in not finding Dr. Buckley's negligence a proximate cause of Mr. Simon's injuries and in failing to grant a new trial based on the inconsistencies in the jury's answers to special interrogatories regarding Dr. Buckley's negligence. We find no manifest error in the trial court's conclusions and again quote from the trial judge's written reasons for judgment:
"The defendant alleges the jury's verdict to be inconsistent in finding Doctor Buckley guilty of `actionable negligence in failing to see and properly interpret the foreign body in the x-ray of November 27, 1978' in response to one interrogatory, and finding in the negative to the question `Was the negligence or fault of Doctor Buckley and Cabrini Hospital the proximate continuing cause of all of the damages sustained by the plaintiff up to the present date?' However, the jury also responded to a further question as follows:

*946 `7. Was the negligence or fault of Doctor Smith and Cabrini Hospital the proximate continuing cause of all of the damages sustained by the plaintiff up to the present date?
 Yes x No ___'
From all of the above it can be reasonably concluded that the jury thought Doctor Buckley to be negligent, but further found the negligence of Doctor Smith and Cabrini Hospital to be `the proximate continuing cause of all of the damages sustained by the plaintiff up to the present date'.
Thus, as Shakespeare found in Hamlet that there was `method in his madness', the Court concludes that the jury knew what it was doing in finding that Doctor Buckley was negligent, but that her negligence was not a proximate cause of the plaintiff's damages."
We turn now to appellees' first assignment which states the trial court erred in holding Dr. Smith liable for the damages sustained by appellees. The contention is that the policy behind the "Captain of the Ship" doctrine are no longer valid since hospitals have lost the protection of charitable immunity. We find it unnecessary to address appellees' theory as there is substantial evidence in the record to support the jury's finding of negligence in Dr. Smith's failure to correctly identify the foreign object in Mr. Simon's body cavity and timely remove it.
A more serious question is posed by the appellees' second assignment of error. They argue that inasmuch as Dr. Smith is protected by R.S. 40:1299.42 B (1), which provides that a plaintiff may not recover more than $500,000.00 for injuries caused by a qualified health care provider, the trial court was in error when it simply divided the entire $750,000.00 jury award in one-half, thereby holding Cabrini liable to appellees for $375,000.00. Appellees argue that if Dr. Smith is solidarily liable with appellant-Cabrini, the doctor's maximum exposure to liability under the lower court's ruling is $750,000.00, which is $250,000.00 more than the law allows. Appellees appeal to this Court to recognize the statutory limit of Dr. Smith's liability and hold both defendants solidarily bound for the first $500,000.00 and assess the remainder of the award against appellant Cabrini.
We find merit in the appellees' argument. Dr. Smith and Cabrini are solidarily liable for the injuries sustained by Mr. Simon because there is an obligation in solido on the part of the debtors when they are all obligated to the same thing. Narcise v. Illinois Central Gulf Railroad Company, 427 So.2d 1192 (La.1983); La. C.C. Art. 1794. Solidarity is not destroyed even though "it derives from a different source for each obligor." La.C.C. Art. 1797. "While one item of damages may be recoverable against one debtor and not the other, the parties are liable in solido as to every item for which plaintiff can compel payment from either." Narcise v. Illinois Central Gulf Railroad Company, supra. As appellees herein could recover a maximum of $500,000.00 from Dr. Smith, he can be liable in solido with Cabrini for no more than that amount. Therefore, we hold that Cabrini is liable to the appellees for its viril share of the solidary obligation which is the sum of $250,000.00, plus the balance of the award above $500,000.00, that is, $130,804.25, as amended, a sum total of $380,804.25.
Accordingly, the special damage award of the district court is reduced from $450,000.00 to $330,804.25 there reducing the total award in favor of appellees from $750,000.00 to $630,804.25. Inasmuch as appellant and Dr. Smith are solidary obligators and the latter has previously settled and is no longer a party to this suit, St. Francis Cabrini Hospital is liable unto the appellees in the amount of $380,804.25. In all other respects the decision of the district court is affirmed. All costs of this appeal to be assessed equally, one-half to appellant and one-half to appellees.[3]
*947 REVERSED IN PART, AFFIRMED IN PART, AMENDED IN PART, AND RENDERED.
NOTES
[1] Although the fact that all other defendants had settled with the original plaintiff was disclosed to the jury, the amount thereof was not revealed. However, the record shows that the amount of the settlement was $226,000.00.
[2] Mr. Simon died on March 13, 1984 while this appeal was pending and his widow and two children have been substituted as appellees. Inasmuch as both briefs mention Mr. Simon's death we find it necessary to state that our determination of particular issues in this appeal must remain unaffected by the ultimate status of the original plaintiff. The reviewing court cannot amend damages on the basis of factual events occurring subsequent to the trial. Dark v. Brinkman, 136 So.2d 463 (La.App. 3rd Cir. 1962), Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971).
[3] We take judicial notice of the fact that there is, now pending in the Ninth Judicial District Court in and for the Parish of Rapides, State of Louisiana, a suit by the heirs of Virgil A. Simon against St. Francis Cabrini Hospital of Alexandria, Louisiana, for the wrongful death of Mr. Simon. This Court, on January 2, 1985, under our docket number 84-1091, denied a writ application by the defendant hospital in connection with the filing by the hospital of exceptions of precription and lis pendens in the death action case. Accordingly, attorneys for the hospital in the case at hand suggest that we should, in the interest of justice, grant a new trial in this case and remand it to be consolidated with the death action case which is presently in the district court. Counsel suggests that the hospital is now faced with an incongruous situation in that the pending district court death action case is based substantially on the same subject matter that forms the basis of the appeal at hand. He suggests the inequity of double recovery. We do not feel that the hospital's suggestion can be properly addressed by us here and now. While this Court can take judicial notice of the wrongful death action below, that case is not before us for review. Rather, any possible inequities alleged by the hospital should be brought to the attention of the district court in the referred to death action case by proper proceedings.