# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 17-391

VESTA HALAY JOHNSTON, ET AL.

VERSUS

SUSAN HALAY VINCENT, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPLICATION FOR SUPERVISORY WRIT OF REVIEW
FROM A JUDGMENT OF THE FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-4153
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Candyce G. Perret, Judges.

**WRIT DENIED.**

Rudie Ray Soileau, Jr.
Hunter William Lundy
Lundy, Lundy, Soileau & South
P. O. Box 3010
Lake Charles, LA 70602
Telephone: (337) 439-0707
COUNSEL FOR:
    Defendants/Respondents - Susan Halay Vincent and Martin Bryan
    Vincent

John Michael Veron
J. Rock Palermo, III
D'Ann R. Penner
Veron, Bice, Palermo & Wilson, LLC
721 Kirby Street
Lake Charles, LA 70601
Telephone: (337) 310-1600
COUNSEL FOR:
   Plaintiffs/Applicants - Vesta Halay Johnston, Lake Charles Rubber and
   Gasket Company, LLC

James David Cain, Jr.
Thomas Patrick LeBlanc
Loftin, Cain & LeBlanc, LLC
113 Dr. Michael DeBakey Drive
Lake Charles, LA 70601
Telephone: (337) 310-4300
COUNSEL FOR:
   Defendants/Respondents - Gulf Coast Rubber & Gasket and Moby
   Goodwin

**THIBODEAUX, Chief Judge.**

Vesta Halay Johnston and Lake Charles Rubber and Gasket Co., L.L.C. (LCR&G) filed suit against Susan Halay Vincent, Martin Bryan Vincent, Moby Goodwin, and Gulf Coast Rubber and Gasket, L.L.C. (GCR&G) for defamation and unfair trade practices. Shortly thereafter, the parties entered into a consent judgment to preserve all of the companies' electronic and digital data as well as the parties' smart phones (Preservation Order). Due to the defendants' unsatisfactory responses to discovery, the plaintiffs' filed a motion to comply which the trial court granted (Production Order). The plaintiffs then filed their motion for sanctions against defendants, alleging violations of the Production Order. In their supplemental memorandum, the plaintiffs further alleged that the defendants had violated the Preservation Order by failing to preserve an iPhone 4 that they claimed belonged to Mr. Vincent and was used by him at times relevant to their suit. Taking the matter under advisement, the trial court subsequently denied the motion for sanctions. After the trial court then denied their motion for reconsideration, the plaintiffs sought writs from this court. Finding no manifest error in the trial court's factual conclusion that the plaintiffs failed to prove that the defendants violated either discovery order, we deny the writ.

I.

**ISSUES**

The plaintiffs ask this court to decide:

(1)     whether the trial court abused its discretion when it denied sanctions under La.Code Civ.P. art. 1471;

(2)    whether the trial court erred when it incorrectly interpreted the Preservation Order and the Production Order; and

(3)    whether the trial court correctly applied the four-factor test for sanctions under La.Code Civ.P. art. 1471.

II.

## FACTS AND PROCEDURAL HISTORY

This family dispute involves LCR&G, a private, family-held business started in 1957 by Michael Halay, the father of Mrs. Vincent, Mrs. Johnston, and Kathryn Halay Heinen. In 1991, Mr. Halay promoted his son-in-law, Mr. Vincent, to general manager of LCR&G and subsequently named him vice president.

Mr. Halay died in 2004, and his three daughters inherited his estate, including LCR&G, in equal one-third shares. LCR&G was reorganized on June 2, 2005, and the three sisters became managing members. In November 2013, Mrs. Vincent filed a shareholder derivative suit against Mrs. Johnston and Mrs. Heinen, claiming that they were interfering with Mr. Vincent's management of the company. Mr. Vincent was later terminated from LCR&G on September 25, 2014. That same month, Mrs. Vincent filed a petition to dissolve LCR&G, and the company was put in receivership. The receivership was shortly dissolved, and the trial court ordered formal mediation, which took place in October 2014. On October 14, 2014, Mrs. Vincent sold her interest in LCR&G to her sisters for $8,615,000. In early November 2014, the Vincents and Mr. Goodwin opened a new, competing business—GCR&G—and allegedly hired eleven key employees from LCR&G.

2

On October 14, 2015, Mrs. Johnston and LCR&G sued the defendants, alleging that GCR&G and its principals had engaged in unfair trade practices, breached their contractual and fiduciary duties, and defamed the plaintiffs by, *inter alia*, taking the plaintiffs' proprietary information, soliciting customers, as well as employees, while still employed by the plaintiffs, and making false public statements about the plaintiffs' financial condition. In part, the plaintiffs sought an expedited contradictory hearing to consider the issuance of an order to preserve and quarantine electronic devices until their computer forensic expert was allowed unimpeded access to copy all data and metadata. The defendants, however, disagreed with the quarantine of their electronic devices. Eventually, the parties agreed upon the Preservation Order at issue herein, and the trial court signed a consent judgment on November 18, 2015, consistent with the parties' agreement.

The Preservation Order required both companies to create and preserve a digital image of all data in an "accessible, usable form":

> **IT IS ORDERED, ADJUDGED AND DECREED** that the parties have a duty to preserve documents, information, data and other electronic or digital communications or compilations of data which are or may be relevant to issues in this litigation. This includes any and all records, notes, memos, letters, photographs, logs, e-mails, ledgers (whether on paper or kept electronically or digitally) pertaining in any way to the allegations of this lawsuit. This includes but certainly is not limited to, any and all business records pertaining the operations of [LCR&G] before October 14, 2015 and to the operations of [GCR&G] from October 15, 2014.
>
> . . . .
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that all parties agree to cease and desist from any activities or acts the result of which would inadvertently or intentionally result in the deletion

3

or destruction of materials which may be the subject of a discovery request or may be potentially relevant.

It also required the parties to preserve all records and content pertinent to their claims and defenses on their iPhones:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the parties agree to take appropriate measures to preserve and prevent from deletion, destruction or alteration any and all records and content pertinent to plaintiffs' claims or defendants' defenses in or on: (1) any and all work electronic mail account(s) to which the parties have access; (2) any and all personal electronic mail account(s) to which Vesta Halay Johnston, Susan Vincent, Martin Bryan Vincent, and Moby Goodwin have access; . . . (4) any and all cellular telephones, smart phones, or iPhones used for work by Vesta Halay Johnston, Susan Vincent, Martin Bryan Vincent, and Moby Goodwin; (5) any and all personal cellular telephones, smart phones, or iPhones of Vesta Halay Johnston, Susan Vincent, Martin Bryan Vincent, and Moby Goodwin[.]

GCR&G subsequently retained Kiersted Systems (Kiersted) in Houston, Texas, to create and store its digital image database.

On December 10, 2015, plaintiffs filed their first set of requests for production of documents. Relevant to the issues herein, the plaintiffs sought the production of "all correspondence, emails, and texts messages between any and all of the defendants and any and all employees of LCR&G between August 2014 to December 2014."[1] In response, defense counsel sent a correspondence to the plaintiffs' counsel, dated January 27, 2016, requesting that the plaintiffs provide a list of former and current employees, as well as any other search terms that the plaintiffs would like the defendants to use to search the image database. The defendants referred to that correspondence in their response to the plaintiffs'

---

[1]In their second set of requests for production, filed on July 21, 2016, the plaintiffs extended the relevant timeframe back to August 2013.

4

requests. On March 3, 2016, the plaintiffs filed their first motion to compel, arguing that they "should not have to produce a list of employees. Mr. Vincent has the experience and the background to generate a list of his own."

After hearing the matter, the trial court granted the motion and signed the Production Order on April 6, 2016. Therein, the trial court ordered "the defendants . . . to produce all correspondence, emails, and text messages between any and all of the defendants and any and all employees of LCR&G . . . between August 2014 and October 2014 without LCR&G producing a list of employees." But, "to the extent that the plaintiffs want GCR&G to produce correspondence, emails, and text messages between any and all of the defendants and any and all employees of LCR&G between November and December 2014, the plaintiffs must first supply GCR&G with a list of said employees."

The plaintiffs then filed their motion for sanctions on June 30, 2016, arguing that "the defendants have refused to comply with this Court's judgment." In their supporting memorandum, the plaintiffs complained (emphasis in original): "To date, **not one single email or text message has been produced** by the defendants in this litigation." The matter was set for hearing on September 12, 2016.

On August 31, 2016, the plaintiffs conducted the La.Code Civ.P. art. 1442 deposition of GCR&G for which Mr. Vincent appeared as representative (the 1442 deposition). During this deposition, Mr. Vincent was specifically asked about the preservation of an iPhone 4 that he allegedly purchased in February 2013. He explained that he "probably had a 4[,]" but he did not remember when he bought it and did not know what had become of it. It was an iPhone 5 that he used in the time period relevant to the motion to compel—August 2014 through

5

December 2014—and had been using since October 2013. That phone was backed up on his home computer, which was imaged by Kiersted, when he upgraded to an iPhone 6 in March or April 2015. Prior to this deposition, the defendants, through Mr. Vincent, had produced text messages, some of which dated back to July 3, 2014, that were reproduced from the backup of Mr. Vincent's iPhone 5 on his personal computer.

In their reply memorandum of law in support of their motion for sanctions, filed on September 8, 2016, the plaintiffs, for the first time, argued that "Mr. Vincent's failure to preserve the physical iPhone 4 and any backup he made to his computer of the iPhone 4, if they existed on October 12, 2015, is a flagrant and deliberate violation of the Preservation Order." They also claimed that "according to the plain language of the Preservation Order, all of the physical iPhones, whether personal or work, from the years 'pertinent to plaintiffs' claims', were covered by the order. One of plaintiffs' claims is that Mr. Vincent began scheming to start a competing business to destroy Mrs. Johnston and LCR&G as early as 2013." In support of this claim, plaintiffs cited paragraph 14 of their original petition in which they alleged: "Bryan and Moby began planning their new venture, GCR&G, before it was formally incorporated on October 30, 2014."

At the outset of the September 12, 2016 hearing, the plaintiffs again advanced their complaint that the defendants had violated the Preservation Order by not preserving the iPhone 4, and they produced a receipt that reflected the purchase of an iPhone 4 from AT&T for the LCR&G phone number assigned to Mr. Vincent on February 26, 2013. They also produced AT&T bills for LCR&G from August and September 2013, which included the number assigned to Mr. Vincent. However, the company's AT&T bill from October 2013 showed that Mr.

Vincent's number was no longer billed to LCR&G. The November 2013 bill revealed the removal of Mrs. Vincent's number as well from the company's AT&T account. From October 2, 2013, and November 2, 2013, respectively, both of the Vincents' numbers were billed by AT&T to Mr. Vincent's personal account.

The testimony of the plaintiffs' forensic expert, Brian Wilson, further established that the direct imaging of an iPhone is the best method of preservation, with the backup being "the only next best" way of preserving the iPhone's data if the phone is not available. "[T]he messages retrieved through an iTunes backup would likely be the same text messages that you would received from a directly connected iPhone." Deleted texts are preserved on an iPhone as long as the messages are on the phone, but over time the deleted messages are overwritten by new data with a phone's continued use. Also, the consumer has no way of controlling what is backed up as it is subject to an Apple protocol, but all texts messages on the phone, even deleted ones, are automatically backed up. If the data on the iPhone is not captured and backed up before the device is used again, however, the chance that it will retain the identical data after use is "astronomically, no." "[A] file inside the backup . . . tells you precisely when the backup occurred." Emails are protected and cannot be collected from the phone for security reasons; "you would have to go to the source to get that e-mail."

The deposition testimony of Fred Behning, the Kiersted employee who actually imaged the defendants' digital data, revealed that the defendants did not turn over their smart phones to be directly imaged. Rather, only the computer backups of the iPhones were imaged and preserved. This, the plaintiffs argued, meant that evidence of the text messages was irretrievably lost. Mr. Vincent, in the 1442 deposition, had explained how, at the time of the imaging in November 2015,

he did know where his iPhone 5 was, as he had already upgraded to his iPhone 6 by that time. Therefore, only the backup was available. However, he later discovered that his son had the iPhone 5, which Mr. Vincent then retrieved and stored in his desk drawer at his office.

During closing arguments held on October 31, 2016, defense counsel informed the trial court that the defendants were actually producing text messages from the iPhone 5 dating back to October 2013, from the image harvested by Kiersted. The trial court, after studying all the exhibits and its previous orders, concluded that there was no violation of either the Preservation Order or the Production Order. In its signed judgment, dated November 4, 2016, the trial court found:

> The evidence shows the Defendants have not responded to discovery as effectively and efficient as the Plaintiffs, but, legally, they are not in violation of any Court order. The information at issue was subject to a preservation order with which the Defendants are still in compliance.

The court also ordered the defendants "to follow the Plaintiffs' model in producing the correspondence, emails, and text messages" to "prevent any further discovery delays."

On November 14, 2016, the plaintiffs filed a motion for reconsideration or rehearing of their motion for sanctions, arguing, relevant herein, that:

> the evidence is undisputed that the Defendants violated the Court's preservation order in . . . not presenting all iPhones to Fred Behning for preservation and harvest. . . .
>
> . . . .
>
> [And] ordering the Defendants to comply with discovery now—after the evidence has been irretrievably lost—is a vain and useless gesture. As Brian Wilson's

8

uncontradicted expert testimony made clear, it is no longer possible to retrieve the evidence the Court previously ordered the Defendants to produce. As a result of the Defendants' failure to turn over their phones and otherwise preserve the electronic evidence they were ordered first to preserve and then to produce, it is irretrievably lost. . . .

As the Plaintiffs attempted unsuccessfully to explain at the closing arguments on October 31, 2016, the *only* sanction that can remedy the Defendants' failure to comply with the Court's orders on discovery is an order of default. Anything less rewards the Defendants for failing to preserve and produce the critical evidence that would prove the Plaintiffs' claims. (Emphasis in original)(footnotes omitted).

The defendants opposed the motion and filed a motion to strike and/or dismiss. The trial court denied the motion to strike after a hearing on January 12, 2017. During the hearing, the plaintiffs sought to admit exhibits reflecting subsequent discovery activities and evidence that was not available at the time of original hearing. In light of the defendants' objection to the exhibits, the motion for reconsideration was pretermitted until February 24, 2017, with the parties to submit additional briefing on the exhibits. A second hearing was held on March 15, 2017, during which the trial court agreed that it was undisputed that Mr. Vincent had an iPhone 4, but that "it's also undisputed he had an iPhone 5 from '14 on which was pre separation." The trial court further questioned counsel as to whether "we know" that it was in existence at the time of the preservation order, to which plaintiffs' counsel replied: "That's a judgment call you've got to make." While remarking on the possibility of the iPhone 4's existence, the trial court found that "[t]here is no probability there." Though the plaintiffs "have a lot of circumstantial evidence[,]" the trial court ultimately concluded that they had not

9

carried their burden of proof. Accordingly, the trial court denied the motion for

reconsideration or rehearing, reasoning:

> Just in summation, I believe while the plaintiffs' argument is persuasive, I do not find that they have met their burden. The court is going to note in its earlier denial that the preservation order was a general, broad order to protect information from being lost. There was no specific protocols put in place; and I agree that the defendants could have done a much better job; but what they did, did not violate the order, at least is the way the court reads it as having been rendered.
>
> . . . .
>
> Specifically the arguments on reconsideration have planted additional seeds that may or may not grow into fruition. Until that can be established, the court will not sanction the defendants.
>
> . . . .
>
> The lost phone that cannot be accounted for also is just [an allegation]. Nothing else has been established. . . . Some have been substantiated with circumstantial support but insufficient at this stage for the court to sanction.
>
> The court is looking at specific allegations and violations and do[es] not find they are present and will find for the defendants at this time.
>
> . . . .
>
> Common sense dictates that while technical violations of discovery may not be found here, one cannot help but raise a questioned eye as to the operation, the credibility, and the good-faith efforts to be forthcoming on all matters by the defendants. And, in summary, too many coincidences does not a good argument. . . .
>
> I'm not going to say that you would be prohibited from revisiting these areas as things may or may not be discovered. There is other things that have been alluded to that may bring forth that information; but at this stage, I do not feel that I overcome my initial determination.

The trial court signed its judgment on March 19, 2017. The plaintiffs are now before this court on writs seeking review of this ruling, denying their motion for reconsideration or rehearing.

## III.

## **TIMELINESS**

As an initial matter, the defendants argue that the plaintiffs' writ application is not timely and should be dismissed. Because the Louisiana Code of Civil Procedure does not provide for a motion to reconsider an interlocutory order, the defendants argue that the motion for reconsideration filed herein did not suspend the time for applying for supervisory writs. However, the trial court allowed the motion for reconsideration or rehearing to go forward, with the admission of two new exhibits and extensive arguments from both sides. Thereafter, the trial court rendered a new judgment "from which [the plaintiffs] could seek supervisory review from this court." *Indus. Pipe, Inc., v. Plaquemines Par. Council*, 12-1348, p. 7 (La.App. 4 Cir. 9/14/12), 100 So.3d 896, 900. Because the plaintiffs' writ application was received in this court within the time designated by the trial court, we find that the writ is properly before us.

## IV.

## **STANDARDS OF REVIEW**

Our "discovery articles grant the trial court the power to compel discovery and the discretion to impose various sanctions on a party or his attorney for unjustified failure to comply with the statutory scheme or to obey an order compelling discovery." *Garza v. Int'l Maint. Corp.*, 97-317, pp. 2-3 (La.App. 3 Cir. 10/29/97), 702 So.2d 1021, 1023. Given this wide discretion, a trial court's

11

"ruling should not be reversed absent an abuse of discretion." *McWilliams v. Exxon Mobil Corp.*, 12-1288, p. 5 (La.App. 3 Cir. 4/3/13), 111 So.3d 564, 570, *writ denied*, 13-1402 (La. 11/8/13), 125 So.3d 451. Prior to imposing sanctions, however, the trial court must first determine whether a party or his attorney has failed "to comply with discovery orders." *Horton v. McCary*, 93-2315, p. 5 (La. 4/11/94), 635 So.2d 199, 203. As a factual finding, this determination is subject to the manifest error or clearly wrong standard of review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

V.

## LAW AND DISCUSSION

"A party to litigation may apply to a court for an order compelling discovery when another party fails to answer properly propounded interrogatories or requests for production. La.Code Civ.P. art. 1469(2)." *Garza*, 702 So.2d at 1023. Louisiana Code of Civil Procedure Article 1471 sets forth the sanctions available for a party's failure to comply with such an order:

> A. If a party or an officer, director, or managing agent of a party or a person designated under Article 1442 or 1448 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Article 1464 or Article 1469, the court in which the action is pending may make such orders in regard to the failure as are just, and among others any of the following:

> (1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

> (2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses,

12

or prohibiting him from introducing designated matters in evidence.

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

(5) Where a party has failed to comply with an order under Article 1464, requiring him to produce another for examination, such orders as are listed in Subparagraphs (1), (2), and (3) of this Paragraph, unless the party failing to comply shows that he is unable to produce such person for examination.

B. Absent exceptional circumstances, a court may not impose sanctions under this Article on a person or party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system.

C. In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Interpreting the above provisions, our supreme court in *Horton*, 635 So.2d at 203

(citations omitted) (alterations in original), explained:

There is a distinction between the sanctions available for failure to comply with discovery and the sanctions available for disobedience of court ordered discovery. Refusal to comply with court ordered discovery is a serious matter. Trial judges must have severe sanctions available to deter litigants from flouting discovery orders.

The Louisiana rule, like Federal Rule 37, allows the trial court to sanction a disobedient party with dismissal or a default judgment. Both dismissal and

13

default are draconian penalties which should be applied only in extreme circumstances. Because the sanctions of dismissal or default involve property rights, those sanctions are generally reserved for the most culpable conduct.

Federal district courts consider four factors before granting a default judgment: (1) whether the violation was willful or resulted from inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violations prejudiced the opposing party's trial preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney.

Dismissal and default are generally reserved for those cases in which the client, as well as the attorney, is at fault. The record must support "a finding that the failure was due to . . . willfulness, bad faith, or fault."

Although the federal courts allow a final judgment on the merits as a default sanction, at least one Louisiana court has interpreted LSA-C.C.P. art. 1702 to require proof of a prima facie case.

The party seeking sanctions bears the burden of proving, by a preponderance of the evidence, a violation of the discovery order or breach of a duty imposed therein. *See Joyner v. Wear*, 27,631 (La.App. 2 Cir. 12/6/95), 665 So.2d 634, *writs denied*, 96-40, 96-42 (La. 2/28/96), 668 So.2d 370 (burden of proof by a preponderance of the evidence for imposition of sanctions for frivolous pleadings). It logically follows, therefore, that the plaintiffs bore the initial burden of proving, by a preponderance of the evidence, that the defendants failed to comply with the Preservation Order and/or the Production Order.

In its denial of the plaintiffs' motion for reconsideration or rehearing, the trial court specifically found that the plaintiffs had not proven, by a probability of the evidence, that the iPhone 4 even existed when the Preservation Order was signed and so could not prove that the defendants had violated the discovery order

14

by failing to preserve it. The burden to provide a justifiable reason for their failure to preserve the iPhone, therefore, never shifted to the defendants. Although the plaintiffs now argue that the defendants had a duty to preserve the iPhone 4 from the time Mrs. Vincent filed her initial shareholder derivative suit against her sisters in November 2013, and that the trial court erred in failing to read the Preservation Order as incorporating this continuing duty, the issue before the trial court was whether the plaintiffs had proven, by a preponderance of the evidence, a violation of the discovery orders as issued by the trial court. The issue presently before this court is whether the trial court manifestly or clearly erred in finding that the plaintiffs have not proven that the defendants violated either order.

After reviewing the evidence, we cannot say the trial court erred in its finding. Relevant herein, the Preservation Order required the defendants "to take appropriate measures to preserve and prevent from deletion, destruction or alteration any and all records and content pertinent to plaintiffs' claims or defendants' defenses in or on" their work or personal smart phones. The plaintiffs' primary concern in seeking the Preservation Order as to the iPhones was the destruction or deletion of pertinent text messages that could help prove their claims. Along these lines, the trial court, in response to plaintiffs' motion to compel, ordered the defendants to produce all correspondence, emails, and text messages between them and any employee of LCR&G from August 2014 through October 2014.

As regards the iPhone 4, all the evidence shows is that Mr. Vincent used an iPhone 4 in 2013 that was purchased by LCR&G, on February 26, 2013, for the company phone number assigned to Mr. Vincent as reflected in the AT&T receipt submitted by the plaintiffs. Mr. Vincent has always maintained, however,

15

that he upgraded to an iPhone 5 when he moved his phone number to his personal account in October 2013. The AT&T bills submitted by the plaintiffs lend support for this claim in that they reflect how the Vincents' phone numbers were removed from LCR&G's account in October and November 2013. The undisputed assertions made to the trial court regarding the production of text messages from October 2013, harvested from the backup of Mr. Vincent's iPhone 5 on his personal computer, lend even further support for the defendants' position.[2] In this manner, all the text messages from August 2014 through October 2014 sought by the plaintiffs in their motion to compel and ordered to be produced by the trial court should have theoretically been preserved in the Kiersted image of the backup of Mr. Vincent's iPhone 5 taken in November 2015. As defense counsel explained during his closing arguments on October 31, 2016, the defendants are producing, in spreadsheet fashion, text messages from this time period and all the way back to October 2013, from that image, albeit in a less than timely or forthcoming manner.

Moreover, the plaintiffs conceded in memorandum to the trial court that the defendants' failure to preserve the iPhone 4 violated the Preservation Order, "if it existed on October 12, 2015." But it was the plaintiffs who had to prove that the iPhone 4, more probably than not, existed on that date and had not been lost long before then, as the defendants have staunchly maintained. The evidence, however, does reasonably show that they failed to prove either the

---

[2]Prior to October 2013, the phone number and the phone associated with that number belonged to LCR&G, and any messages archived by AT&T for that number up until that date should legally be accessible by the company. During the 1442 deposition, plaintiffs' counsel explained how her "client has requested text messages from AT&T [] [t]o answer your discovery requests [and] AT&T has agreed to send us those text messages. . . . They can . . . produce things that have been deleted from the phone." Counsel then informed the defendants that she had a completed authorization form for them "limited by date from October 1st, 2013 through December 31st, 2014." The time-sensitive nature of such an authorization was also stressed.

existence of the iPhone 4 or its use by Mr. Vincent beyond the February 2013 receipt and the September 2013 AT&T bill, respectively.

Regardless, at this time the plaintiffs have not proven the irretrievable loss of the text messages which, they argue, would warrant the imposition of the sanctions sought. Rather, the undisputed assertions made to the trial court demonstrate that the defendants are producing text messages back to October 2013. All the messages exchanged prior to October 2013 were made from an LCR&G phone on an LCR&G phone number issued by AT&T, which the plaintiffs should have the authority to request from AT&T.[3]

Accordingly, we find no manifest or clear error in the trial court's finding that no technical violation of the discovery orders has been proven at this time. With that said, however, we agree with the trial court that the evidence produced does show that the defendants have not been forthcoming, efficient, or effective in their discovery practice so far.

As our supreme court has recognized, in *Hodges v. S. Farm Bureau Cas. Ins. Co.*, 433 So.2d 125, 129 (La.1983):

> The basic objectives of the Louisiana discovery process are (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims.

---

[3]Moreover, according to the expert trial testimony, the backup of the iPhone 5 contains a file that tells "precisely when the backup occurred." The plaintiffs make much of the defendants' failure to produce their actual iPhones for imaging in November 2015. However, their expert also testified that deleted messages are overwritten with continued use. Therefore, it logically follows that, if the backup occurred in March or April 2015, as Mr. Vincent testified to in the 1442 deposition and which the date file should prove, then the backup, created at least six months before suit was filed, would contain messages that could very well have been overwritten by November 2015 with the phone's continued use seemingly by Mr. Vincent's son.

The defendants' reluctance and delay in responding to discovery herein thwart these objectives, as well as offend the very purpose behind our discovery laws. We note with great disapproval that the defendants did not produce a single text message until after the plaintiffs filed their motion for sanctions. And when the messages were finally produced, they were piecemeal and did not correspond with the AT&T phone records. Rather, the messages and emails were admittedly hand-selected and reproduced by Mr. Vincent from his computer. The defendants did not even search their Kiersted database until after the September 12, 2016 hearing. While neither the Preservation Order nor the Production Order was explicit as to the manner or method of preservation or production, the trial court order requiring the defendants' compliance with the plaintiffs' model of production made in its original denial of sanctions hopefully will remedy any deficiencies in these orders.

Nevertheless, La.Code Civ.P. art. 1462(E) acknowledges the issues that have arisen with the recent advent of electronic discovery and grants the courts discretion to appoint a special master to aid in the production of such discovery:

> If the requesting party considers that the production of designated electronically stored information is not in compliance with the request, the requesting party may move under Article 1469 for an order compelling discovery, and in addition to the other relief afforded by Article 1469, upon a showing of good cause by the requesting party, the court may order the responding party to afford access under specified conditions and scope to the requesting party, the representative of the requesting party, or the designee of the court to the computers or other types of devices used for the electronic storage of information to inspect, copy, test, and sample the designated electronically stored information within the scope of Articles 1422 and 1425.

By appointing a designee, the court can direct the manner and scope of the search while ensuring the protection of the responding party from undue burden and

disclosure of protected information. In this way, the court facilitates the requesting party's access to relevant and discoverable information and, at the same time, protects the responding party from unwarranted exposure, both of which are even more necessary now as discovery continues to move in an electronic and digital direction.

Pursuant to the Preservation Order herein, both parties preserved their electronic and digital data. That data is now contained in image databases, which, under the provisions of La.Code Civ.P. art. 1462(E), can be "inspect[ed], cop[ied], and test[ed]" by a designee of the court for good cause shown. Although the exhibits and hearings in this matter have not demonstrated a technical violation of the discovery orders, they have shown good cause for the appointment of such a designee, particularly given the voluminous nature of the electronic discovery in this case, the hostility evident in the correspondence between counsel for both parties, and the outright reluctance of the defendants to cooperate effectively in the production of their electronic data. In light of this, we believe that the appointment of a special master to oversee the electronic discovery in this matter is warranted.

VI.

**CONCLUSION**

For these reasons, we find no manifest or clear error in the trial court's finding no technical violation of the discovery orders herein. With the strong recommendation for the appointment of a special master, we affirm the trial court's judgment, denying the plaintiffs' motion for reconsideration or rehearing.

Costs are assessed to the Defendants/Respondents.

**WRIT DENIED**.