# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 20-357


**VESTA HALAY JOHNSTON, ET AL.**

**VERSUS**

**SUSAN HALAY VINCENT, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-4153
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**ELIZABETH A. PICKETT**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, Chief Judge, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


**AFFIRMED IN PART; AMENDED
IN PART; REVERSED IN PART; AND
REMANDED WITH INSTRUCTIONS.**

**J. Michael Veron**
**Turner D. Brumby**
**Veron, Bice, Palermo & Wilson, LLC**
**721 Kirby Street**
**Lake Charles, LA 70601**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Vesta Halay Johnston**
    **Lake Charles Rubber and GasketCompany, LLC**

**Rudie R Soileau, Jr.**
**Hunter W. Lundy**
**Lundy, Lundy, Soileau & South**
**501 Broad Street**
**Lake Charles, LA 70601**
**(337) 439-0707**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Martin Bryan Vincent**

**Thomas P. Leblanc**
**Loftin & Leblanc, LLC**
**410 E. College Street, Suite A**
**Lake Charles, LA 70605**
**(337) 310-4300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Gulf Coast Rubber and Gasket, L.L.C.**

**PICKETT, Judge.**

The plaintiffs appeal the trial court's judgment granting it some but not all relief it sought against the defendants in this litigation concerning competing businesses. For the following reasons, we affirm in part, amend in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL BACKGROUND

A detailed history of the events leading to this appeal is outlined in *Johnston v. Vincent*, 19-55 (La.App. 3 Cir. 5/20/20), __ So.2d __, *writ denied*, 20-1344 (La. 2/9/21), 310 So.3d 182. In 2015, after buying out her sisters' interests in the family industrial supply business, Lake Charles Rubber & Gasket, Co., L.L.C. (hereafter LCRG), Vesta Halay Johnston, individually and on behalf of LCRG,[1] filed suit against Susan Halay Vincent, Martin Bryan Vincent, and Gulf Coast Rubber & Gasket Co., L.L.C. (GCRG),[2] the business the Vincents started that is in competition with LCRG, to recover damages allegedly caused by GCRG's breach of contract and violations of the Louisiana Unfair Trade Practices Act (LUTPA), La.R.S. 15:1401-1430, and the Louisiana Unfair Trade Secrets Act (LUTSA), La.R.S. 15:1431-39. With regard to the LUTSA and LUTPA claims, LCRG asserted that GCRG took and used proprietary information and trade secrets of LCRG to start GCRG and begin competing against LCRG. According to LCRG, GCRG's use of its proprietary information and trade secrets allowed GCRG to open for business in a matter of weeks, rather than the years it would have taken GCRG to accumulate that information on its own and successfully compete against LCRG.

---

[1]. Unless otherwise indicated, the plaintiffs are hereinafter referenced as LCRG.

[2] Unless otherwise indicated, the defendants are hereinafter referenced as GCRG.

LCRG quickly sought to have the trial court order that GCRG preserve evidence and quarantine electronic devices until LCRG's computer forensic expert could freely access and copy all data and metadata in GCRG's possession. GCRG initially resisted but ultimately agreed to a preservation order. On November 18, 2015, the trial court signed a judgment recognizing the preservation order. Pursuant to the preservation order, GCRG hired experts to create and preserve a digital image of all data existing at the time of the preservation order. Seven months later, LCRG filed a motion for sanctions asserting GCRG violated the preservation order. The trial court denied the motion, and this court denied LCRG's writ application in which they argued the trial court abused its discretion in denying their motion for sanction. *Johnston v. Vincent*, 17-391 (La.App. 3 Cir. 12/13/17), 258 So.3d 687.

Beginning in January 2018, the trial court conducted a bench trial over the course of fifty-four days. After LCRG rested its case, GCRG filed a motion for involuntary dismissal as provided by La.Code Civ.P. art. 1672(B). On August 30, 2018, the trial court granted GCRG's motion in part and dismissed with prejudice LCRG's claims for breach of contract as to Susan and Bryan, LUTSA and LUTPA violations against Susan,[3] and treble damages under LUTPA as to all defendants.

Thereafter, pursuant to an application for supervisory writs filed by LCRG, another panel of this court reversed the trial court's dismissal of the claims for damages against GCRG and Bryan as to LCRG's LUTSA and LUTPA claims. Finding LCRG had an adequate remedy by appeal to review that judgment, the

---

[3] The trial court also dismissed the following claims asserted by LCRG that are not at issue herein: (1) defamation against defendant Moby Goodwin; and (2) violations of the Louisiana Unfair Sales Law against all defendants.

panel declined to review the dismissal of Susan. *Johnston v. Vincent*, 18-691 (La.App. 3 Cir. 9/14/18) (unpublished writ decision).

The trial subsequently resumed on the claims against Bryan and GCRG that had not been dismissed. Meanwhile, LCRG timely appealed the trial court's judgment dismissing their claims against Susan, which this court reversed in *Johnston*, __ So.3d __.

After the trial concluded, the trial court issued Written Reasons in which it determined GCRG violated provisions of LUTSA and LUTPA and awarded LCRG $700,000 in lost profits but denied LCRG's claims for unjust enrichment, future damages, treble damages, attorney fees, and all costs, as provided by LUTSA and LUTPA.

In LCRG's prior appeal, this court made the following pertinent findings of fact:

> It became clear that GCRG relied on files that had LCRG contracts, customer information, pricing and cost information, vendor information and other proprietary information. Brian Wilson, Plaintiffs' computer forensics expert, testified it was "conclusive that 14,532 electronic business files belonging to Lake Charles Rubber & Gasket are in the possession of the employees and owners of lake - - of Gulf Coast Rubber and Gasket." He further concluded employees of GCRG "used a variety of means to copy [LCRG] business files, including thumb drives, Dropbox, and Google Drive." Mr. Wilson also testified in his opinion the Defendants did not comply with the preservation order.

*Id.* at __.

The panel further observed that Susan engaged in vindictive behavior toward her sisters before she sold her interest in LCRG to Vesta and their sister Kathy, concluding Susan's arguments otherwise "ignored the uncontroverted evidence [showed] that GCRG was in possession of [through whatever means acquired] and *continually used*, both before and after suit was filed, business files, customer lists,

pricing, cost[,] and vendor information, which took decades for LCRG to accumulate." *Id*. at __. In closing, the panel observed:

> The record is clear GCRG continued . . . to use LCRG's proprietary data long after the Act of Sale was signed on January 8, 2015, even regardless of the stated, earlier effective date of October 15, 2014. This is a clear violation of the contracts entered into by the parties[,] and the trial court erred in finding Susan did not breach the contracts at issue on this matter.

*Id*. at __.

## ASSIGNMENTS OF ERROR

LCRG assigns five errors with the trial court's judgment:

1. The trial court erred in finding that the vast majority of the information the defendants stole and used was not a trade secret.

2. The trial court erred in rejecting the unrebutted damage calculations of LCRG's expert.

3. The trial court erred in refusing to award future damages or to enjoin the continued use of the stolen information.

4. The trial court erred in refusing to treble the plaintiffs' damages.

5. The trial court erred in refusing to award the plaintiffs their attorney[] fees.

6. The trial court erred in refusing to award the plaintiffs all of their costs.

GCRG and Brian Vincent answered the appeal, asserting:

1. The district court erred in finding that any conduct on the part of Defendants was the cause of any damage to Plaintiffs. Accordingly, the judgment of the district court must be reversed, and all of Plaintiffs' claims against Defendants must be dismissed.

2. The district court erred as a matter of law in finding Martin Bryan Vincent personally liable for any conduct alleged against Gulf Coast Rubber on the part of Defendants was the cause of any damage to Plaintiffs. Accordingly, the judgment of the district court must be reversed, and all of Plaintiffs' claims against Defendants must be dismissed.

4

3. The district court awarded Plaintiffs $700,000[] for lost profits. The district court erred as a matter of law in awarding any damages for lost profits to Vesta Halay Johnston, individually, as (Vesta Halay Johnston, individually, had no cause/right of action against Defendant; for lost profits. Accordingly, the judgment of the district court must be reversed, and all of Vesta Halay Johnston's claims against Defendants must be dismissed.

## SCOPE OF REVIEW

LCRG contends we must apply the de novo standard of review to the trial court's judgment because the trial court committed legal error in deciding its claims. LCRG argues that when the trial court denied GCRG's motion for involuntary dismissal regarding their claims against GCRG and Bryan, the burden of proof shifted to GCRG to defeat their claims. GCRG urges, however, that the trial court's denial of its motion for involuntary dismissal as to some of LCRG's claims was discretionary and did not shift the burden of proof. Accordingly, GCRG concludes that the manifest error-clearly wrong standard of review applies because LCRG's claims required the judge to make findings of fact.

Pursuant to La.Code Civ.P. art. 1672(B), a defendant can file a motion for involuntary dismissal at the close of evidence in a bench trial. In such instances, the trial court has two options: 1) determine the facts and render judgment against the plaintiff or 2) decline to render judgment until the close of all the evidence. The plain wording of Article 1672 shows that "the denial of a motion for involuntary dismissal is purely discretionary." *Hudson v. AIG Nat'l Ins. Co.*, 10-63, p. 4 (La.App. 3 Cir. 6/2/10), 40 So.3d 484, 489.

Whether information or property is a trade secret and whether a party has engaged in an unfair trade practice is a finding of fact. *Pontchartrain Med. Labs, Inc. v. Roche Biomedical Labs, Inc.*, 95-2260 (La.App. 1 Cir. 6/28/96), 677 So.2d 1086; *Bihm v. Deca Sys., Inc.*, 16-356 (La.App. 1 Cir. 8/8/17), 226 So.3d 466,

5

respectively. Under the manifest error standard of review, appellate courts can only reverse a trial court's findings of fact if its review of the entire record shows there is no reasonable factual basis for those factual findings and that the trial court is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993).

As discussed above, another panel of this court reversed the trial court's grant of GCRG's motion for involuntary dismissal as to Susan and decided some of the factual issues presented in this appeal, i.e., GCRG's taking and use of LCRG's information. That panel did not consider the specific nature GCRG's actions or whether they violated LUTSA or LUTPA. As a result, the manifest error standard of review applies to the trial court's LUTSA and LUTPA determinations.

### LUTSA and LUTPA

The trial court's Written Reasons indicate that because GCRG's owners and many of its employees had long work histories with LCRG, long working relationships with LCRG's customers, as well as extensive familiarity with and knowledge of LCRG's business information, LCRG did not prove all of its claims. LCRG contends the trial court erred in finding GCRG's only violation of LUTSA was GCRG's use of its waterjet drawings and only unfair trade practice was its use of LCRG's thirteen-digit part numbers. LCRG further contends the trial court erred in not finding the following are trade secrets: its inventory/parts classification system, its customer list with annual revenues each customer generated, current and historical contracts, designs, drawings, and other valuable information.

In *Bihm*, 226 So.3d at 481, the court outlined the purpose and elements of LUTSA and LUTPA, explaining both acts "regulate and balance the rights of parties engaged in competitive commerce with the goal of striking a balance

6

between free enterprise and protecting business owners by prohibiting unfair or deceptive acts or practices in the conduct of trade." LUTSA is more "specific and narrow" than LUTPA and "prohibits the theft, bribery, misrepresentation, breach, or misappropriation of a company's 'trade secrets.'" *Id*. LUTPA is more general and addresses "unfair methods of competition" and "unfair or deceptive acts or practices." La.R.S. 51:1405(A). For example, allegations of acts constituting a prohibited breach of confidence may not meet the requirements of a trade secret by definition, yet fall within the scope of prohibited conduct under LUTPA. *Bihm*, 226 So.3d 466.

LUTSA defines trade secret as:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and

(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

La.R.S. 51:1431(4).

The plaintiff in a trade secrets case must prove: (1) "a legally protectable trade secret actually existed" and (2) "an express or implied contractual or confidential relationship existed between the parties which obligated the party receiving the secret information not to use or disclose it." *Pontchartrain*, 677 So.2d at 1090. Additionally, "the plaintiff must prove the party receiving the secret information wrongfully breached its duty of trust or confidence by disclosing or using the information to the injury of plaintiff." *Id*.

7

Under LUTPA, "[c]onduct is considered unlawful when it involves "fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct." *Nursing Enterprises, Inc. v. Marr*, 30,776, p. 4 (La.App. 2 Cir. 8/19/98), 719 So.2d 524, 528. A plaintiff asserting a claim under LUTPA is only required to prove: 1) it possessed knowledge or information not generally known, 2) it communicated "this knowledge or information to the defendant under an express or implied agreement limiting its use or disclosure by the defendant," and 3) the defendant used or disclosed the information and caused injury to the plaintiff. *Bihm*, 226 So.3d at 482.

LCRG argues the trial court erred in failing to find that its customer list is a trade secret. *Pontchartrain*, 677 So.2d 1086, held a customer list may be a trade secret if efforts are made to maintain its secrecy. A plaintiff need only show that his efforts to maintain secrecy were "reasonable under the circumstances," which may include "advising employees of the existence of a trade secret, limiting access to a trade secret on a 'need to know basis', and controlling plant access." La.R.S. 51:1431(4)(b), Comment (f). Courts have also held, however: "Resigning salesmen who surrendered to their employer their work papers and customer lists cannot be enjoined from using their memories and knowledge that is generally available to the public to compete for sales against their former employer on the allegation of [mis]use of alleged *secret information.*" *Pearce v. Austin*, 465 So.2d 868, 871 (La.App. 2 Cir. 1985) (citing *Gulf Toy House, Inc. v. Bertrand*, 306 So.2d 361, (La.App. 3 Cir.1975)).

When addressing a former employee's taking of a customer list, the court in *Bihm*, 226 So.3d at 485, observed:

8

Considerations as to the type of protection to be afforded to the employer in a specific case include the manner in which and the purpose for which customer lists are compiled; the conduct and motivation of the employee before and after termination and the nature of the representations made to the customer by the former employee; and the existence of a scheme to take over all or a substantial part of the former employer's business, or of an intent to injure the former employer's business. *Id.* A critical factor is a defendant's motivation; the actions must have been taken with the specific purpose of harming the competition.

In *Bihm*, 226 So.3d 466, the court of appeal affirmed the trial court's finding that a former employee's secret taking of a customer list developed by his employer over years of business to compete against the employer constituted a trade secret.

LCRG presented evidence showing it did not share its customer list with others. Nonetheless, more likely than not, LCRG's competitors, including GCRG, would know the vast majority of LCRG's customers on the list, but would not know LCRG's revenue from each. One of GCRG's expert witnesses maintained that the list was not a trade secret because in his role as general manager, Bryan knew both LCRG's customers and the revenue they generated and prepared LCRG's customer list. Lastly, some of the former LCRG salesmen, who now work for GCRG, testified they regularly monitor revenues their customers generate.

Unlike the cases cited above, GCRG employees did not surrender their work lists or LCRG's customer list, and GCRG did not rely on the knowledge and memory of its long-time employees. Instead, Bryan obtained a copy of LCRG's list of 374 customers and circulated it to GCRG employees the first day GCRG was online for business in order to compete against LCRG. There is no evidence GCRG employees had sufficient knowledge and memory of LCRG's customer list to recreate it. Moreover, while the customers on the list may have been known to

9

LCRG's competitors, their generated revenue was not. Accordingly, the trial court manifestly erred in not holding the customer list is a trade secret.

LCRG also argues the trial court erred in holding that its part numbers and inventory system were not trade secrets. LCRG's inventory system includes long and short descriptions for each part, vendor sources and pricing for the parts, as well as cross referencing parts to customers, their usage, inventory counts, part specifications, and customer pricing information with LCRG's profit margins. LCRG established it does not share the information contained in its integrated inventory system with third parties.

More than one witness testified customers sometimes share one vendor's bid information, including the vendor's part numbers and pricing, with another vendor to negotiate a lower price, and LCRG employees acknowledged this fact. This fact alone does not substantiate the trial court's conclusion that LCRG part numbers are separate from its inventory system. This conclusion ignores the significant importance of LCRG part numbers to the integrated system: they provide access to the extensive information contained in the inventory system and were likened to the combination to a safe. As a result, a part number provided to a customer who does not have access to LCRG's inventory system is just a number. Such is not the case with GCRG, which substantially copied LCRG's inventory system. Furthermore, LCRG's inventory system includes special customer pricing which may also be a trade secret. *Bihm*, 226 So.3d 466; *Pontchartrain*, 677 So.2d 1086. The trial court manifestly erred in holding that LCRG's inventory system, including its part numbers and special customer pricing, is not a trade secret and/or an unfair trade practice.

The trial court also determined that LCRG's inventory and usage lists for stocking the self-service centers (SSCs) of one of LCRG's major customers, Sasol, are not trade secrets and that GCRG's use of them was not an unfair trade practice. In 2015, Sasol invited GCRG and LCRG to bid on a contract to stock the inventory for Sasol's SSCs, which included more than 240 items in varying quantities that were specific to individual SSCs within Sasol's facility. GCRG won the contract. After awarding the contract, Sasol gave GCRG one week to stock the SSCs. GCRG did not know how much inventory each SSC required, and Sasol could not produce that information. GCRG's Sasol account representative had Sasol's purchasing assistant procure a copy of LCRG's inventory list. Each page of the inventory list LCRG provided to Sasol identified the document as being LCRG's "work product and privileged information" that was not to be shared with LCRG's competitors. Upon receiving the lists from Sasol, GCRG's employee notified Sasol that GCRG could not use the lists with LCRG's notice on it. The account representative copied the lists without the notice and resent them to GCRG. GCRC then used the modified lists to stock Sasol's SSCs.

Sasol did not have inventory information for its SSCs, and GCRG could not replenish the SSCs' inventory without LCRG's inventory lists or LCRG's inventory in place, which LCRG had removed when it lost the contract. LCRG never shared the information with anyone and only shared it with Sasol when its purchasing department demanded it at GCRG's request. Before sharing the lists, LCRG notified Sasol they were a trade secret, confidential, and not to be shared with anyone else.

Misappropriation of a trade secret is defined, in part, by LUTSA as:

(a)    acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b)    . . . use of a trade secret of another without express or implied consent by a person who:

  (i)    used improper means to acquire knowledge of the trade secret; or

  (ii)    at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

  . . . .
    (bb)    acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

    (cc)    derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use[.]

La.R.S. 51:1431(2). "Improper means" is defined to include "inducement of a breach of a duty to maintain secrecy." La.R.S. 51:1431(1).

The evidence established no one at GCRG had independent knowledge of the inventory stocked in each Sasol SSC, the information was not readily available to Sasol or GCRG, and LCRG's lists had value as they were necessary to fulfill GCRG's contract with Sasol. Accordingly, the trial court committed manifest error in failing to hold that LCRG's inventory lists for Sasol's SSCs were not a trade secret and that GCRG misappropriated them.

LUTSA and LUTPA overlap to some extent. *Bihm*, 226 So.3d 466. GCRG's misappropriating LCRG trade secrets and taking and using all other LCRG business information was deceptive and unethical conduct and a breach of

12

Bryan's fiduciary duty as former general manager of LCRG. Accordingly, GCRG committed unfair trade practices in this regard against LCRG. *Id.* For these same reasons, GCRG's first and second assigned errors lack merit.

## DAMAGES

LCRG contends the trial court erred in awarding it only $700,000 in damages because GCRG failed to rebut its expert's damage calculations. The trial court refused LCRG's damage claims for diminished value and unjust enrichment, finding any contracts LCRG lost "would have eventually gone to GCRG, which would still have led to an increase in market competition, a loss in profit margin, and ultimately a decrease in ownership value." LCRG's evidence as to the dollar amount of its damages was unrebutted by GCRG. Instead, GCRG's experts critiqued LCRG's expert's methodology in calculating damages and identified factors, other than GCRG's actions, that contributed to LCRG's loss of revenues.

Appellate review of a damage award requires a determination of whether the damages awarded constitute a clear abuse of the trial court's great discretion in light of the particular injuries the defendant's actions caused and their effects upon the particular injured party before the court. *Rando v. Anco Insulations Inc.*, 08-1163, 08-1169 (La. 5/22/09), 16 So.3d 1065. Only if a detailed analysis of the facts shows the award to be an abuse of discretion can the award be considered either excessive or insufficient. *Id.* We review the trial court's exercise of discretion; we do not decide the damage award we believe would be appropriate. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

GCRG argues the trial court recognized that GCRG's success is due primarily to its experienced personnel, not to its use of LCRG's information, such

that LCRG has not proved its taking and use of LCRG information caused LCRG damages that exceed the trial court's award. GCRG contends LCRG's expert failed to take into account factors unrelated to its behavior that greatly reduced any damage it caused to LCRG. These factors include the cyclical nature of the petrochemical industry related to turnarounds, new construction, and major repairs; LCRG's loss of contracts to competitors other than GCRG; a loss of income due to a manufacturing error, which resulted in LCRG reimbursing a customer $120,000, discounting sales 5% on the existing contract, and providing free hose testing for three years; LCRG won four of five contracts it competed against GCRG for; the only contract LCRG lost to GCRG was due to GCRG's acceptance of conditioned prices proposed by Sasol, which LCRG refused to accept; and LCRG lost its contract with another client because that client did not invite LCRG to bid on the contract. GCRG further argued LCRG's expert failed to take into account the impact of losing a long-time general manager and numerous long-term employees, including salesmen who allegedly accounted for 90% of LCRG's prior earnings. GCRG also pointed out that after GCRG began operating, one of LCRG's major vendors also experienced losses of hundreds of thousands of dollars in the Lake Charles market. The vendor's representative acknowledged that those losses were due, at least in part, to GCRG's relationship with Sasol, which led Sasol to begin using gaskets manufactured by a company other than his company employer.

LCRG's expert, Jason McMoran, explained in detail the methodology he used to calculate LCRG's damages. He also acknowledged he assumed that all losses LCRG experienced after October 2014 were caused by GCRG's "bad acts." Mr. McMoran testified on rebuttal and recalculated LCRG's losses to incorporate information presented at trial. He concluded LCRG's lost profits for November 1,

14

2014, through June 30, 2017, totaled $3,850,046. He further testified that LCRG's claim for unjust enrichment was $8,024,746 for the period ending December 31, 2016. Lastly, Mr. McMoran testified the value of Vesta's interest in LCRG was diminished by $2,702,157 through June 30, 2015. GCRG did not present any expert evidence on the amount of damages its actions caused LCRG.

The trial court's conclusion that the only benefit GCRG derived from its taking and use of LCRG's extensive business information was getting it up to speed more quickly to successfully compete against LCRG completely disregards GCRG's continuous and extensive use of LCRG information when soliciting business from LCRG's competitors and that GCRG personnel regularly requested, shared, and used LCRG's contract bid and pricing information, including its bids on contracts it won with Sasol and the contract LCRG was not invited to bid on, as well as the inventory information to satisfy its contractual obligations for Sasol's SSCs and sales GCRG made to other LCRG customers.

GCRG contends the trial court did not err in rejecting LCRG claim for unjust enrichment damages, noting a plaintiff "may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." La.R.S. 51:1433. It also points out that the word "may" is permissive; therefore, such an award is discretionary. La.R.S. 1:3; *Brumley v. Med Express Ambulance Serv.*, 96-197, p. 5 (La.App. 3 Cir. 6/5/96), 676 So.2d 662, 665.

The entirety of the evidence shows the trial court's award of $700,000 is unreasonable and is an abuse of discretion. After finding that a trial court's damage award is abusively low, an appellate court "can only increase the award to the lowest amount which is reasonably within the court's discretion." *Ryan v.*

15

*Zurich Am. Ins. Co.,* 07-2312, p. 7 (La. 7/1/08), 988 So.2d 214, 219. In view of the unrebutted expert testimony, we increase the trial court's damage award to LCRG, individually, $3,850,046 for lost profits and $8,024,746 for unjust enrichment. We also award Vesta $2,702,157 for the diminished value of her ownership interest in LCRG.

LCRG next asserts the trial court erred in refusing to allow it to present evidence of future damages GCRG's acts will cause it and denying its claim for future damages. LCRG seeks future damages in the form of a 5% royalty from GCRG for its continued use of its intellectual property, relying on the testimony of a defense expert who testified he pays a 5% royalty for the right to use intellectual property of another.

GCRG counters that LCRG is protected by an order the trial court signed December 11, 2018. In that order, the trial court lifted the November 18, 2015, preservation order "provided [GCRG] shall maintain the collected data . . . only to be accessed or deleted by Court order" and ordered that GCRG "immediately take all reasonable steps to identify and destroy any and all information, documents, files, data generated by [LCRG] in the possession of [GCRG], if any." The order further granted LCRG "the right to seek sanctions for any willful violation of this Order by [GCRG]." Finding LCRG can pursue an award for future damages in the trial court, we will not award future damages at this time.

## TREBLE DAMAGES

If after being notified by the attorney general to cease such action, a party knowingly commits an unfair trade practice which causes "any person . . . any ascertainable loss of money," "the court shall award [the person] three times the actual damages sustained." La.R.S. 51:1409(A). GCRG received notices from the

attorney general in June 2016 and June 2017. At trial, GCRG employees testified GCRG's inventory system had never been changed, and they had never been instructed to change how they performed their work for GCRG. In other words, they never stopped using LCRG information GCRG copied onto its computers.

The trial court did not deny LCRG's claim for treble damages because it concluded GCRG did not continue using LCRG information after being notified by the attorney general to cease using LCRG information. To the contrary, the trial court determined that the parties' consensual preservation order "prevented [GCRG] from being able to fully comply" with Section 1409. The trial court reasoned: "Any attempt to change the parts numbering system or other information that was taken and used by [GCRG] would have been a direct violation of that preservation order."

The preservation order, in part, ordered the parties: 1) "to preserve documents, information, data and other electronic or digital communications or compilations of data which are or may be relevant to issues in this litigation"; 2) "the parties . . . to take appropriate measures to preserve and prevent from deletion, destruction[,] or alteration any and all records and content pertinent to plaintiffs' claims or defendants' defenses" as specified in the order; 3) not to modify or delete on-line storage and/or direct access storage devices attached to any computers owned or used by the parties and specified individuals; and 4) not perform any actions that would alter, damage, or corrupt information pertinent to the parties' claims.

LCRG contends the trial court's conclusion "converted an order to preserve evidence into a license to use that evidence illegally." GCRG argues it had to violate the preservation order to comply with the attorney general's notices.

LUTPA provides for the issuance of an injunction and the award of treble damages but does not prohibit an award of treble damages if an injunction is issued in a case. La.R.S. 51:1407; 1409(A). GCRG did not show how its compliance with the attorney general's notices would have violated the preservation order. More importantly, GCRG could have obtained court approval to comply with the attorney general's notice and had its computer experts remove LCRG's information from its computers to ensure its compliance with the attorney general's notices would not be construed as a violation of the preservation order. Instead, GCRG continued doing business as it had before the preservation order and its receipt of the attorney general's notices.

Section 1409 is mandatory. The trial court's holding that GCRG is not liable for treble damages is reversed, and LCRG is awarded treble damages.

## ATTORNEY FEES AND COSTS

LCRG urges the trial court legally erred in denying its claims for attorney fees and costs because LUTPA mandates that it be awarded attorney fees and costs. LUTPA provides that the court "shall award" to a plaintiff awarded damages under the act "reasonable attorney fees and costs." La.R.S. 51:1409(A). The trial court legally erred in denying LCRG's claim for attorney fees and awarding LCRG only 75% of its costs. The matter is remanded to the trial court to conduct a hearing and award LCRG its reasonable attorney fees and all its costs.

## DISPOSITION

For the reasons herein, the judgment of the trial court is reversed, in part, and affirmed in part. Lake Charles Rubber and Gasket is awarded judgment against Gulf Coast Rubber and Gasket, Susan Halay Vincent, and Martin Bryan Vincent in the amount of $3,850,046 for lost earnings and $8,024,746 for unjust

18

enrichment, treble damages, reasonable attorney fees, and all court costs. Vesta Halay Johnston is awarded judgment against Gulf Coast Rubber and Gasket, Susan Halay Vincent, and Martin Bryan Vincent in the amount of $2,702,157 for the diminished value of her ownership interest in LCRG, treble damages, reasonable attorney fees, and costs. The matter is remanded to the trial court to determine LCRG's reasonable attorney fees.

**AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.**